IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**PHL VARIABLE INSURANCE COMPANY**            **PLAINTIFF**

V.            **CASE NO. 4:06CV00952**

**FULBRIGHT MCNEILL, INC.**            **DEFENDANT**

## ORDER

Pending are cross motions for summary judgment. (Docket #'s 4 and 13). Following a thorough review of the pleadings, exhibits and after hearing argument of counsel in a hearing held December 14, 2006, the Court finds that the motion of Plaintiff, docket # 13, should be and hereby is granted. Defendant's motion for summary judgment, docket # 4, is denied.

### Facts

This action is a dispute over a life insurance policy. Defendant Fulbright McNeill, Inc. ("FMI") initially filed this case in Pulaski County Circuit Court. Following the completion of discovery, FMI non-suited the case and Plaintiff PHL Variable Insurance Company ("PHL") filed this declaratory judgment action seeking rescission and cancellation of the policy.

On February 28, 2003, Keith McNeill ("McNeill") completed and signed an application to PHL for a $3,000,000.00 life insurance policy. The beneficiary of the policy was to be FMI, a rubber product manufacturing company in Wynne, Arkansas in which McNeill owned a 50% interest. On March 17, 2003, McNeill underwent a paramedic examination and completed and signed part II of the PHL life insurance policy application. At that time, McNeill was reportedly in good health and had no problems with his heart.

On April 2, 2003, McNeill voluntarily submitted to a cardioscan/coronary artery calcification study with gated ct ("Coronary Test") which was administered in the Methodist Healthcare North Hospital, Memphis, Tennessee. The Coronary Test revealed McNeill's total coronary artery calcium score to be 431, placing him at a 90% likelihood of having a heart attack and at "high risk" of cardiovascular disease.

Plaintiff contends that on April 2 or 3, 2003, Dr. Tom S. Fowler, radiologist, Memphis, Tennessee, dictated a report of the McNeill Coronary Test and within a few days personally contacted McNeill to inform him of the results. On April 7, 2003, the Methodist Healthcare North Hospital sent a letter report to McNeill.

PHL used and relied upon the information and answers to the questions in the application and application part II to issue and print the McNeill policy. On or shortly after June 15, 2003, PHL printed and issued the McNeill policy with an Issue Date of June 15, 2003. On July 11, 2003, the McNeill policy was delivered to McNeill. McNeill signed a policy acceptance form at that time. McNeill did not disclose to PHL the Coronary Test or results at any time.

On January 28, 2004, McNeill died from a heart attack.

FMI made a claim to PHL for payment of the death benefits of $3,000,000 under the McNeill policy. PHL refused to pay the death benefit claim on the ground that McNeill had made a misrepresentation in the application for the insurance. PHL contends that the application contained a misstatement because the Coronary Test was never revealed to PHL. PHL contends that McNeill had a duty to notify PHL of the change in his condition during the period of time between the application and the issuance of the policy. Additionally, PHL contends that McNeill affirmed that the statements made in his initial application remained true when he signed the

policy acceptance form on July 11, 2003.

FMI argues that the terms of the policy preclude PHL from relying upon any misrepresentation in the policy acceptance form and McNeill had no duty to notify PHL of his medical condition following his initial application.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set

>     forth affirmative evidence, specific facts, showing that there is a
>     genuine dispute on that issue.  If the respondent fails to carry that
>     burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

                              Discussion

The rules relating to the interpretation of insurance contracts in Arkansas are as follows: "An insurance policy is to be construed strictly against the insurer, who chooses its language. The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence." *U.S. Fidelity & Guar. Co. v. Continental Cas. Co.*, 353 Ark. 834, 841, l120 S.W.3d 556, 560 (2003) citations omitted.  Further, "provisions contained in a policy of insurance must be construed most strongly against the insurance company which prepared it, and if a reasonable construction may be given to the contract which would justify recovery, it would be the duty of the court to do so."  *Id.*  "It is also a cardinal rule of insurance law that a policy of insurance is to be construed liberally in favor of the insured and strictly against the insurer or, as more fully stated, if the language employed is ambiguous, or there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted." *Id.*

The Arkansas Supreme Court and the Eighth Circuit Court of Appeals recognize the duty of utmost good faith requiring an applicant for insurance to exercise due diligence and to

communicate to the proposed insurer facts materially affecting the risk which arise after the application has been submitted but before the policy has been delivered. "Insurance policies are traditionally contracts *uberrimae fidei* and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option." *Stipcich v. Metropolitan Life Ins. Co.* 277 U.S. 311, 316 (1928). The Supreme Court explained that the reason for the rule applies to changes materially affecting the risk which come to the knowledge of the insurer after the application but before the delivery of the policy:

> For even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy,

*Id.* at 316-17. The Eighth Circuit recognized the application of this duty in *Springfield Fire & Marine Ins. Co. v. National Fire Ins. Co.*, 51 F. 2d 714 (8th Cir. 1931). And the Arkansas Supreme Court recognized the application of this duty in *Dodds v. Hanover Ins. Co.*, 317 Ark. 563, 880 S.W.2d 311 (1994).

An insurer may contract away this duty. An insurer may assume the risk of changes in the insured's health which may occur between the date of the application and the date the policy is issued, however, the parties must exclusively contract on the basis of conditions as they existed at the date of the application. *Stipcich*, 277 U.S. at 315. FMI argues that the following language in the policy does just that:

> We rely on all statements made by or for the insured in the written application or in any supplemental application for reinstatement. These statements are considered to be representations and not warranties. We can contest the validity

>of this policy for any material misrepresentations of fact. However, the misrepresentations must be contained in the written application and a copy of the application must be attached to this policy when issued.

PHL argues that the application and application part II became false after the Coronary Test. McNeill had a duty to speak and disclose that information and failed to do so. PHL argues that this failure to disclose was a legally cognizable misrepresentation. Further, McNeill again misrepresented the state of his health when he signed the policy acceptance form affirming that his answers in the application and application part II were still full, complete and true. As it applies to the duty to disclose, the Court finds the policy language controlling if the parties have contracted away the duty to disclose material changes which occur between the written application and the delivery of the policy. The Court finds that the language in this contract does not indicate that the parties are exclusively contracting based upon conditions as they existed at the time of the original application. The data provided to PHL and upon which it relied in deciding whether to insure McNeill became false upon McNeill's knowledge of the results of the Coronary Test. The duty of good faith and fair dealing required McNeill to notify PHL to advise them of this fact. Accordingly, the Court finds that McNeill had a duty to notify PHL of the Coronary Test and his failure to do so makes the policy voidable at the option of PHL.

Additionally, the Court finds that McNeill committed a material misrepresentation when he signed the policy acceptance form. On July 11, 2003 McNeill signed the policy acceptance form which contained the following language: "the insured(s) declares that the statements made in the application remain full, complete and true as of this date; that since the date of the application, no insured has applied to any insurance company or society without receiving the exact policy applied for or had any symptoms, diseases or disorders for which advice has been

sought." The acceptance form also states: "All insured(s) must attest to the above declaration. If any insured cannot attest to the above statement, please so indicate by checking the box next to the insured's signature below and complete a Health Statement Form for that insured. PLEASE NOTE: Home Office approval of the Health Statement Form is necessary before the policy is in effect." (Emphasis in original). McNeill did not check the box next to his signature and did not complete a Health Statement Form.

> Ark. Code Ann. §23-79-107 provides:
>
> (a) All statements in any application for a life or accident and health insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
>> (1) Fraudulent;
>>
>> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>>
>> (3) The insurer in good faith would not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the facts had been made known to the insurer as required by the application for the policy or contract or otherwise.

The Court finds that McNeill committed a material misrepresentation in negotiations for his policy of insurance by affirming in the policy acceptance form that the statements contained in his original applications remained full, complete and true as of July 11, 2003. Further, PHL would not have issued the policy of insurance as written had it known of the Coronary Test.

FMI argues that McNeill did not read the policy acceptance form because of conduct of Craig Campbell, the insurance agent who sold and delivered the McNeill policy. The Court has considered the evidence presented by the parties and finds that McNeill had an opportunity to

examine the Policy Acceptance Form when it was delivered.  Accordingly, he is "bound under the law to know the contents of [the form] signed by him and he cannot excuse himself by saying he did not know what it contained."  *Carmichael v. Nationwide Life Ins. Co.*, 305 Ark. 549, 810 S.W.2d 39 (1991).  FMI did not present sufficient evidence which would create a question of fact as to whether McNeill's signature was obtained under undue influence, misrepresentation, fraud or other inequitable conduct.

For these reasons, the Court finds that the motion of Plaintiff, docket # 13, should be and hereby is granted.  Defendant's motion for summary judgment, docket # 4, is denied.  The policy of insurance at issue herein is hereby cancelled and rescinded.

IT IS SO ORDERED this 22nd day of January, 2007.

James M. Moody
United States District Judge